IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION
_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR 05-38-GF-SEH-RKS |
| | ) | |
| vs. | ) | AMENDED FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW, AND |
| TASHA MARIE LAMERE, | ) | RECOMMENDATIONS |
| | ) | |
| Defendant. | ) | |

_____

## FINDINGS OF FACT

The Defendant, Ms. Tasha Lamere ("Ms. Lamere"), was charged in March, 2005 with: Count I - Conspiracy to Commit Robbery Affecting Interstate Commerce in violation of 18 U.S.C. § 1951(a); Count II - Robbery Affecting Interstate Commerce in violation of 18 U.S.C. § 1951(a); Count III - Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c).  (C.D. 1.)  The charges arose

Page 1 of  10

from a drug-related robbery in which Danny Matt was murdered by one of Ms. Lamere's co-conspirators.

Mr. Daniel R. Wilson was appointed to represent Ms. Lamere. (C.D. 35.) Their attorney-client relationship was one of open communication. Ms. Lamere felt free to speak to Mr. Wilson and ask questions. (C.D. 219 at 20-21.) Mr. Wilson felt Ms. Lamere was more intelligent than the average client. Ms. Lamere was willing to ask questions, give direction to Mr. Wilson, and make decisions about the case. (C.D. 219 at 33-34.)

Pursuant to a plea agreement, Ms. Lamere pled guilty to Count I of the indictment, and the Government dismissed the remaining two Counts of the indictment. (C.D. 61, 67, 203.) In pleading guilty, Ms. Lamere acknowledged that she was part of a plan to rob a drug dealer named Coby Adams. During the robbery, Ms. Lamere remained in the car while three others accomplished the robbery. In the course of robbing Coby Adams, a struggle broke out between a co-conspirator and Danny Matt, wherein Matt was fatally stabbed. Ms. Lamere maintains she had no intention to cause anyone physical harm, nor did she foresee harm to anyone during the robbery. (C.D. 203 at 17-38.)

The plea agreement between Ms. Lamere and the Government contained an appeal waiver wherein Ms. Lamere agreed to waive her right to appeal her sentence if

1) the Court accepted the plea agreement, and 2) the Government moved for a downward departure from the sentencing guidelines. The plea waiver carried an exception for claims based on ineffective assistance of counsel.  (C.D. 61.)

Before signing the plea agreement, Ms. Lamere discussed its terms, including the appeal waiver, with Mr. Wilson.  (C.D. 219 at 12.)  She understood that under the statute of conviction, she faced a maximum sentence of twenty (20) years imprisonment and a maximum fine of $250,000.00.  Ms. Lamere and Mr. Wilson also discussed the sentencing guidelines.  Mr. Wilson informed Ms. Lamere she could be sentenced under U.S.S.G. § 2A1.1(a), the first-degree murder guideline, rather than the robbery guideline.  Ms. Lamere believed her maximum sentence would not exceed fifteen (15) years, even if the first-degree murder guideline applied, because the Government agreed to make a downward departure.  If the first-degree murder guideline was not applied, Ms. Lamere expected her sentence to be around five (5) years.  (C.D. 219 at 12-15.)  The change of plea hearing was held June 8, 2005 before the Hon. Sam E. Haddon.  (C.D. 203.)

After Ms. Lamere's change of plea hearing, a presentence report was prepared. The presentence report recommended she be sentenced under the first-degree murder guideline. Mr. Wilson objected.  (C.D. 219 at 23.)  At sentencing, the Court overruled Ms. Lamere's objection and calculated her base offense level at 43, under the first-

degree murder guideline. Her guideline range was between 292 to 365 months. The Government moved for a sentence reduction based upon Ms. Lamere's cooperation and recommended a sentence of 180 months. The Court granted the Government's motion to reduce Ms. Lamere's sentence. Mr. Wilson recommended a sentence of 63-78 months. The Court rejected both recommendations and sentenced Ms. Lamere to 196 months. (Sentencing Tr. at 15-17.)

The Court advised Ms. Lamere she had ten (10) days to file a notice of appeal, despite the waiver, if she believed the waiver invalid or unenforceable. The Court told Ms. Lamere that it would instruct the Clerk of Court to file a notice of appeal immediately if she so desired. Ms. Lamere indicated she understood. (Sentencing Tr. at 20-21.

Ms. Lamere and Mr. Wilson spoke briefly immediately after her sentencing, and Ms. Lamere told Mr. Wilson she wanted to appeal the sentence. (C.D. 219 at 24.) Mr. Wilson told her to call him the next day to discuss the matter further. (C.D. 219 at 15-16, 39-40.)

Mr. Wilson researched whether Ms. Lamere could appeal her sentence in light of the appeal waiver in the plea agreement. (C.D. 219 at 38.) His time records, introduced into evidence at the hearing as Exhibit 3 (C.D. 217-2), indicate he worked between 12-18 minutes researching the issue. Mr. Wilson indicated that he

customarily reduces his bills in CJA cases.  Mr. Wilson then testified that he could not say whether he spent "21, 23, or 28 or 31 minutes" researching.  He did not recall what cases he reviewed during his research.  (C.D. 219 at 46.)

Ms. Lamere called Mr. Wilson the day after her sentencing.  They discussed Ms. Lamere's appeal, and several other matters.  According to Mr. Wilson's time records, introduced into evidence at the hearing as Exhibit 4 (C.D. 217-3), the phone call lasted 12 to 18 minutes.  The two did not discuss whether or not Ms. Lamere could file a notice of appeal, nor did they discuss instances where waivers of appeal do not bar the right to appeal, rather they discussed the merits of an appeal in Ms. Lamere's case.  (C.D. 219 at 17-18, 49-50.)

After the telephone call, Mr. Wilson followed-up with a letter to Ms. Lamere.  The letter, dated December 9, 2005, was introduced into evidence as Exhibit 5.  (C.D. 217-4.)  The letter stated that "based on our discussion and understanding, I will not be filing an appeal of your sentence."  (Id.)  Ms. Lamere received the letter, read it carefully, and understood an appeal would not be filed.  (C.D. 219 at 26-27.)  Ms. Lamere did not direct Mr. Wilson to file a notice appeal, nor did Mr. Wilson refuse a request by Ms. Lamere to file a notice of appeal.  (C.D. 219 at 18-19, 27, 40, 43.)  Mr. Wilson generally has clients sign an "appeal waiver" when no appeal is filed, but that was not done in this case.  (C.D. 219 at 34-36, 46, C.D. 217-2.)

In October of 2006, Ms. Lamere petitioned this Court for relief under 28 U.S.C. § 2255.  See CV-06-93-GF-SEH.  Her petition was denied before the United States of America was required to respond.  Id.  Ms. Lamere appealed to the Ninth Circuit Court of Appeals.  (C.D. 188.)  The Ninth Circuit reversed and remanded the case for an evidentiary hearing on two issues: 1) whether Ms. Lamere directed her trial counsel to file a notice of appeal regarding her sentencing, and 2) whether trial counsel gave deficient advice to Ms. Lamere about the potential consequences of her guilty plea, resulting in prejudice to her.  (C.D. 204.)

This case was referred to the undersigned by Order of the Honorable Sam E. Haddon (C.D. 206) to hold an evidentiary hearing pursuant to the Ninth Circuit Memorandum and Mandate.  (C.D. 204, 205.)  The evidentiary hearing was held on January 29, 2010 at the Missouri River Courthouse in Great Falls, Montana.  Present in person were: Assistant United States Attorney Mr. Joseph E. Thaggard, for the Government; Assistant Federal Defender Mr. David F. Ness for the Defendant, Ms. Lamere; Defendant Ms. Lamere; and Mr. Daniel R Wilson, Defendant's trial counsel.

## CONCLUSIONS OF LAW

At the beginning of the hearing, Mr. Ness informed the Court that Ms. Lamere would not pursue her claim for deficient advice regarding her guilty plea.  (C.D. 219 at 3-4.)  Consequently, these findings are limited to the issue of the filing of a notice

of appeal, and the deficient advice claim should be denied.

Ms. Lamere seeks relief on the only remaining ground - that Mr. Wilson was ineffective by failing to file a notice of appeal regarding her sentence.

Section 2255 is a proper vehicle to bring ineffective assistance of counsel claim under the Sixth Amendment.  United States v. Span, 75 F.3d 1383, 1387 (9th Cir. 1996).  A Defendant seeking to establish a claim for ineffective assistance of counsel must show both: 1) that counsel's conduct fell below an objective standard of reasonableness, and 2) that counsel's conduct prejudiced the Defendant, meaning "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 667, 687, 694 (1984).   Failure to satisfy either prong of the Strickland test obviates the need to consider the other.  Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2005).

Judicial scrutiny of an attorney's performance must be highly deferential.  Strickland, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  Id.; Rios v. Rocha, 299 F.3d at 805.  The reasonableness of the attorney's conduct will be evaluated from the attorney's perspective at the time of the conduct.  Id. at 689.  The Court must consider the totality of the circumstances when deciding whether an attorney's

performance was ineffective.  Id. at 690.

An attorney "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  Roe v. Flores-Ortega, 528 U.S. 470 (2000).  Conversely, an attorney does not act deficiently when following a client's explicit instruction not to file a notice of appeal.  Id. at 477, citing Jones v. Barnes, 463 U.S. 745, 751 (1983).

In cases where a defendant does not clearly indicate whether she wants her attorney to file a notice of appeal, the question becomes "whether counsel in fact consulted with the defendant about an appeal."  Flores-Ortega, 528 U.S. at 478.  "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Id.  If consultation has taken place, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  Id.

In the present case, it is undisputed that Mr. Wilson consulted with Ms. Lamere regarding an appeal of her sentence.  The question is not whether Mr. Wilson gave her proper advice during that consultation, as Ms. Lamere argues.  The question is exactly what the Ninth Circuit suggested - did Ms. Lamere instruct her attorney to file a notice of appeal?  She did not, and therefore Mr. Wilson's performance was reasonable in

light of all the circumstances.

Immediately after her sentencing, Ms. Lamere indicated she wanted to appeal. Mr. Wilson did further research on the issue, and he consulted Ms. Lamere the day after her sentencing. During the consultation, Mr. Wilson and Ms. Lamere discussed not whether a notice of appeal <u>could</u> be filed, but rather the merits of an appeal <u>in her specific case</u> given the appeal waiver contained in the plea agreement. Essentially, they discussed the advantages and disadvantages of Ms. Lamere's potential appeal. <u>Flores-Ortega</u>, 528 U.S. at 478. After the consultation, Ms. Lamere did not instruct Mr. Wilson to file a notice of appeal. Ms. Lamere also did not instruct Mr. Wilson not to file a notice of appeal.

However, Mr. Wilson understood that no appeal would be filed, and memorialized that understanding in a letter to Ms. Lamere. The letter stated "based on our discussion and understanding, I will not be filing an appeal of your sentence." Ms. Lamere received the letter, read it carefully, and understood an appeal would not be filed. At no time, either before or after receiving the letter, did Ms. Lamere instruct Mr. Wilson to file a notice of appeal. Mr. Wilson did not refuse to file a notice of appeal on behalf of Ms. Lamere, because she never expressly instructed him to do so. Therefore, Mr. Wilson's performance was reasonable considering the totality of the circumstances. <u>Id</u>.

## RECOMMENDATION

After considering the issues as directed by the Ninth Circuit, **IT IS HEREBY RECOMMENDED** that Ms. Lamere's 2255 Motion should be **DENIED** in all respects.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 6th day of April, 2010.

                         */s/ Keith Strong*
                         Keith Strong
                         United States Magistrate Judge